IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOYCE ROCK,

       Plaintiff,

v.                                             CIV 13-0652 KBM/CG

DON LEVINSKI and
BOARD OF EDUCATION OF
CENTRAL CONSOLIDATED
SCHOOL DISTRICT

       Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendants' Motion for Summary

Judgment (*Doc. 48*), which was fully briefed on June 27, 2014, and Plaintiff's Motion for

Leave to File a Surreply (*Doc. 62*), fully briefed on July 11, 2014.   Pursuant to 28 U.S.C.

§ 636 and Fed. R. Civ. P. 73, the parties have consented to have me serve as the

presiding judge and conduct all proceedings, including trial.   *Doc. 11*.   Having

considered the submissions of the parties, the supplemental authority (*Docs. 61 and 65*),

the Surreply (*Doc. 62-1*), and the relevant law, the Court will grant Plaintiff's Motion for

Leave to file the Surreply, as well as grant Defendants' Motion for Summary Judgment.

**I.**      **Background and Procedural Posture**

Plaintiff Joyce Rock was the Principal of Career Prep High School ("CPHS"), an

"alternative" school in the Central Consolidated School District located in Shiprock, New

Mexico ("District").   In early May of 2013, the District determined that it needed to close

the school due to budgetary reasons and held a community meeting to explain those

reasons to students and parents.[1]   Plaintiff attended that meeting and spoke out against the school closing, expressing her opinion that many of the students would either fail or drop out if they were required to attend another high school.   Subsequently, Defendant Don Levinski, District Superintendent, directed that Plaintiff's contract not be renewed primarily because of her comments at the community meeting.

Plaintiff brings a claim under 42 U.S.C. § 1983, alleging that she was terminated in retaliation for exercising her First Amendment right to freedom of speech.[2]   Defendants' Motion for Summary Judgment contends that Plaintiff's speech during the community meeting was made pursuant to her official capacity as Principal and, therefore, her First Amendment claim must fail.   Plaintiff disagrees and proclaims her statements were made as a citizen and are, therefore, protected by the First Amendment.

## II.   <u>Legal Standard</u>

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   A "genuine" dispute exists where the evidence is such that a reasonable jury could resolve the issue either way.   *See Adler v. Wal-Mart Stores*, Inc., 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986)).   "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776 (2007).   The "materiality" of a

---

[1]  The day after the community meeting, the District identified additional funds and abandoned the plan to close CPHS.   *Doc. 48* at 3.

[2]  In her First Amended Complaint, Plaintiff brought claims against Phil Kasper, Director of Administration, and a claim under the New Mexico's Whistleblower Protection Act, but she has since voluntarily dismissed those claims. *See Doc. 29.*

fact is determined by substantive law.   *Anderson*, 477 U.S. at 248.   "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.   Factual disputes that are irrelevant or unnecessary will not be counted."   *Id.*   A mere scintilla of evidence in the non-movant's favor is not sufficient to defeat summary judgment.   *Id.* at 252.

The court must consider the record, and all reasonable inferences therefrom, in the light most favorable to the party opposing the motion, *Adler*, 144 F.3d at 670 (citing *Anderson*, 477 U.S. at 248), but the court need only consider the materials cited by the parties.   Fed. R. Civ. P. 56(C)(3).   In the event that a party fails to cite materials or otherwise properly address another party's assertion of fact, the court may consider the fact undisputed and where the movant is entitled to it, grant summary judgment.   Fed. R. Civ. P. 56(e); D.N.M.LR-Civ. 56.1 ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").

## III.   <u>Undisputed Material Facts</u>[3]

As an "alternative" school, CPHS serves students who are teen parents, those with long-term suspensions, or those who simply did not "fit in" at other schools.   Plaintiff was hired as Principal of CPHS in 2009, and her job duties included:   evaluating services to ensure students, employees, and school district needs were being met; evaluating the effectiveness of programs; carrying out and communicating District policy to students and

---

[3]  The Court rejects Defendants' argument that Plaintiff's affidavit creates a "sham" issue of fact and should stricken.   *See Hernandez v. Valley View Hosp. Ass'n*, 684 F.3d 950, 956, n.3 (10th Cir. 2012) (citing *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir.1986) (stating "courts will disregard a contrary affidavit when they conclude that it constitutes an attempt to create a sham fact issue")).   "To be disregarded as a sham, an affidavit must contradict prior sworn statements."   *Id.* (citation omitted).   While, as Defendants point out, many of the facts in Plaintiff's affidavit are immaterial to the issues or conclusory, they do not specifically contradict her deposition testimony.   Nevertheless, the Court finds that the affidavit testimony does not preclude the entry of summary judgment in favor of Defendants.

their parents; and communicating a clear vision of excellence consistent with the mission and goals of the District.[4]   As Principal, she was generally concerned about the educational process for the students at CPHS.   In performing her community relations duties as Principal, Plaintiff would often attend school-related meetings and events held at the school after hours to interact with parents and students.

On May 6, 2013, Kasper advised Plaintiff that the District had decided to close CPHS at the end of the school year for budgetary reasons.   The plan was to transfer CPHS students and programs to Shiprock High School, which is located just down the street from CPHS.   This would allow the district to cut back on expenses such as administration, staffing, and heating and cooling, but continue to provide the educational programs offered at CPHS.   On the afternoon of May 8, 2013, Superintendent Levinski called a meeting to explain the reasons for closing the school to the CPHS staff.   Plaintiff admits she participated in that staff meeting in her official capacity as Principal.   *Id.*

Later that evening, a second meeting was held in the school cafeteria, which included students, parents, and members of the community, to explain the plan to close the school ("community meeting").   While neither Levinski nor Kasper told Plaintiff she was required to do so, Plaintiff attended the community meeting and spoke against closing CPHS.   Plaintiff concedes that it was appropriate for her to attend as CPHS's "chief administrative officer," *Doc. 53* at 22, and she has not come forth with evidence contradicting the Superintendent's deposition testimony that he fully expected and

---

[4]  Plaintiff proclaims that it was not a part of her job duties to evaluate the programs district-wide or advise the superintendent on whether or not to close the school.   *Doc. 53* at 8 and 9.   The argument of what Plaintiff's job duties did not include, however, fails to genuinely dispute what Plaintiff's job duties did include.

assumed Plaintiff would attend the community meeting as principal of the school.

Toward the end of the meeting, Plaintiff stood and introduced herself as the principal of CPHS.   She then expressed her opinion that if CHPS closed, its students would either drop-out or not be successful because many of them had already had difficulties at other schools, which brought them to CPHS.   During the meeting a student became very emotional and raised his voice, and at Levinski's prompting, Plaintiff intervened and calmed the student down.   At the meeting's conclusion, Plaintiff again addressed those attending, thanked them for participating, and stated "our doors are always open to our community members."   In her closing remarks, she also thanked Levinski for coming to CPHS.

On May 29, 2013, at the direction of Superintendent Levinski, Kasper notified Plaintiff of the non-renewal of her contract and placed her on administrative leave through the end of the year.   *Id.* at 34.   Levinski's primary reason for not renewing Plaintiff's contract was because of the content and tone of her speech at the community meeting. *Id.* at 36.   Levinski found Plaintiff's remarks to be critical of the district's policies and that Plaintiff's statement that CPHS students could not succeed academically if transferred to Shiprock High School was not only false but offensive and discouraging to CPHS students and detrimental to the District's educational mission.

## IV.   <u>Discussion</u>

As an employee of the government, "a citizen must accept certain limitations on his or her freedom."   *Garcetti v. Ceballos*, 547 U.S. 410, 418, 126 S. Ct. 1951 (2006).   "At the same time, the First Amendment limits the ability of a public employer to leverage the employment relationship to restrict, incidentally or intentionally, the liberties employees

enjoy in their capacities as private citizens."   *Brammer-Hoelter v. Twin Peaks Charter Academy*, 492 F.3d 1192, 1204 (10th Cir. 2007) (quoting *Garcetti*, 547 U.S. at 418) (internal quotations omitted).   Accordingly, when a government employee speaks on a matter of public concern, her employer may only restrict her speech when it is necessary for the efficient and effective delivery of services.   *Id.* at 1202.

When considering a freedom of speech retaliation claim, the courts have developed a five-step inquiry referred to as the "*Garcetti/Pickering*" analysis.   First, the Court determines whether the employee speaks pursuant to his or her official duties, and if so, the speech is not protected because the restriction "simply reflects the exercise of employer control over what the employer itself has commissioned or created."   *Garcetti*, 547 U.S. at 422.   If the employee speaks as a citizen and not pursuant to official duties, the court must determine whether the subject of the speech is a matter of public concern. *Id.*   If the speech is not a matter of public concern, it is not protected and the inquiry ends. Where the speech is a matter of public concern, the court proceeds to the third step to determine "whether the employee's interest in commenting on the issue outweighs the interest of the state as employer."   *Id.*   (citing *Casey v. W. Las Vegas Indep. Sch. Dist.*, 473 F.3d 1323, 1327 (10th Cir. 2007)).   When an employee's interest outweighs that of the employer, the employee must establish that the speech was a substantial or motivating factor in a detrimental employment decision.   *Brammer-Hoelter,* 492 F.3d at 1203 (quoting *Lybrook v. Members of Farmington Mun. Sch. Bd. of Educ.*, 232 F.3d 1334, 1338 (10th Cir. 2000)).   Finally, once the employee establishes the speech was a substantial or motivating factor, "the employer may demonstrate that it would have taken the same action against the employee even in the absence of the protected speech."   *Id.*

(quoting *Lybrook*, 232 F.3d at 1339).   "The first three steps are to be resolved by the district court while the last two are ordinarily for the trier of fact."   *Id.* (citation omitted); *see also Duvall v. Putnam City Sch. Dist., Indep. Sch. Dist. No. 1 of Oklahoma Cnty.*, 530 F. App'x 804, 820 (10th Cir. 2013) (quoting *Dixon v. Kirkpatrick*, 553 F.3d 1294, 1302 (10th Cir. 2009)).[5]

In this case, Plaintiff clearly spoke on matters of public concern.   The issue here involves the first and third factors of the *Garcetti/Pickering* analysis:   whether Plaintiff's speech was made pursuant to her official duties, and, if not, whether her interest in making her remarks as a private citizen outweighs the District's interest in efficient delivery of its services.

    A.    <u>Plaintiff's Speech was Made Pursuant to her Official Duties.</u>

In determining whether an employee speaks pursuant to her official duties, an official job description or speech about the subject matter of an employee's work is not dispositive.   *Brammer-Hoelter,* 492 F.3d at 1203*,* 1204.   Rather, the court "must take a practical view of all the facts and circumstances surrounding the speech and the employment relationship."   *Id. at 1203.*   "[I]f an employee engages in speech during the course of performing an official duty and the speech reasonably contributes to or facilitates the employee's performance of the official duty, the speech is made pursuant to the employee's official duties."   *Id.*   In other words, an employee's speech is made pursuant to their official duties when it is generally consistent with the type of activities an

---

[5]  Plaintiff cites cases from other circuits in support of her argument that the question of whether an employee's speech was made as a citizen or as part of her official duties is a mixed question of law and fact. The Court is not persuaded in light of clearly established law in the Tenth Circuit that the issue is a question for the court.

employee is paid to do.   *Id.* at 1204.   As the Supreme Court recently reiterated, "[t]he critical question under *Garcetti* is whether the speech at issue is itself ordinarily within the scope of any employee's duties, not whether it merely concerns those duties."   *Lane v. Franks*, 134 S. Ct. 2369, 2379 (2014).

While neither Levinski nor Kasper told Plaintiff to be at the community meeting, Plaintiff acknowledges that it was appropriate for her to attend and has not disputed that they expected and assumed she would be present.   It was the type of after-hours, community-related event that she would often attend as Principal and, in fact, she preceded her remarks by introducing herself as the Principal of CPHS.   Next, she expressed her appreciation for the students, parents and community members who spoke and encouraged others to voice their opinion about closing the school.   Plaintiff continued acting in her role as principal during the community meeting, and at her superior's nonverbal request, calmed an emotional student.   Plaintiff concluded the meeting, thanked everyone for coming including the Superintendent, and indicated that the school's doors were always open to the community.   Plaintiff had the authority to perform in this manner because she served as the institution's Principal.   It is clear that, despite her professed subjective belief that she was speaking as a private citizen, Plaintiff attended the meeting in her capacity as Principal and her remarks were delivered in that context.

True, it was not Plaintiff's job to advise the District on whether or not to close the school or on any such large-scale budgetary issues.   However, as Defendants point out, the speech she contends merits protection was not regarding budgetary issues or advice on whether to close the school.   The speech expressed her opinion as to the educational

outcomes for CPHS students should the school close, a topic which is ordinarily within the scope of her responsibilities – she was charged with communicating changes in the educational programs at CPHS to the community and evaluating the effectiveness of programs.   Plaintiff's speech, therefore, was generally consistent with the type of activities she was "commissioned" to do and, despite her claims to the contrary, was made pursuant to her official duties and in the capacity as Principal of CPHS.

      B.    The District's Interests in Efficient Service Outweighs Plaintiff's Interests in the Speech at Issue.

      Even if Plaintiff had not been speaking in her official capacity, Defendant's interest in efficient service outweighs Plaintiff's interest in free speech.   When weighing an employee's First Amendment speech against an employer's interest, the issue is whether the employer "has an efficiency interest which would justify it in restricting the particular speech at issue."   *Brammer-Hoelter*, 492 F.3d at 1207.   While this prong is framed as a "balancing" test, the Tenth Circuit has held that "First Amendment rights are protected unless the employer shows that some restriction is necessary to prevent the disruption of official functions or to insure effective performance by the employee."   *Dixon,* 553 F.3d at 1304 (internal quotations and citations omitted).

      When conducting this analysis, the Court should consider "whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise."   *Brammer-Hoelter,* 492 F.3d at 1207 (quoting *Rankin v. McPherson*, 483 U.S. 378, 388, 107 S. Ct. 2891 (1987)).   A government's interest in

avoiding direct disruption will outweigh a public employee's protected speech rights.   *Id.* (citation omitted).   That is, the speech itself must cause the disruption to the "public employer's internal operations and employment relationships."   *Id.* (citation omitted). The Court should also consider the position of the employee.   *Fields v. City of Tulsa*, 753 F.3d 1000, 1014 (10th Cir. 2014) (quoting *Curtis v. Okla. City Pub. Sch. Bd. of Educ.*, 147 F.3d 1200, 1213 (10th Cir.1998)) ("The employee's burden of caution is greater when the employee serves in a 'confidential, policymaking, or public contact role,' rather than, for example, a clerical role, because of the higher likelihood the employee's speech will cause disruption to the agency's successful functioning.")

It is the employer's burden to justify its regulation of the employee's speech. *Brammer-Hoelter,* 492 F.3d at 1207.   However, "the government does not have to wait for speech to actually disrupt core operations before it takes any action, and its reasonable predictions of harm used to justify restriction of employee speech are entitled to some deference."   *Andersen v. McCotter*, 100 F.3d 723, 729 (10th Cir. 1996).   Where "the government employer can show that the termination was based on legitimate reasons grounded in the efficient conduct of public business, there is no need to proceed to balancing."   *Dixon*, 553 F.3d at 1304.

At the community meeting, Superintendent Levinski believed that the District had no choice but to close the school.   He explained that the programs offered at CPHS were going to be moved to Shiprock High School, not eliminated, allowing the district to cut costs.   Plaintiff's opinion that students from CPHS would drop out or otherwise fail if the school closed undermined the plan to continue serving the CPHS student body at Shiprock High School.   It further undermined Levinski's confidence in Plaintiff's ability to

support the District's official policies and positions as a part of the executive team and was perceived to negatively impact the District's interest in providing efficient and effective services.   These were legitimate concerns based on Plaintiff's comments at the community meeting that outweighed Plaintiff's interest in making those public comments and, therefore, provided a legitimate basis for Plaintiff's termination.

C. Levinski is Entitled to Qualified Immunity.

Defendant Levinski has asserted qualified immunity, which shifts the burden to Plaintiff to establish that Levinski violated a clearly established constitutional right. *Panagoulakos v. Yazzie*, 741 F.3d 1126, 1129 (10th Cir. 2013) (citations omitted).   "For a constitutional right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id*. (quoting *Wilson v. Montano*, 715 F.3d 847, 852 (10th Cir.2013)).   Accordingly, there must be a Supreme Court or Tenth Circuit case on point or the clear weight of authority from other courts must support Plaintiff's theory of the case.   *Id*

Since Plaintiff has not established a violation of a constitutional right, Levinski is entitled to qualified immunity on that basis alone.   However, Plaintiff also cannot establish that her First Amendment rights were clearly established.   Plaintiff cites *Thomas v. City of Blanchard*, 548 F3d 1317 (10th Cir. 2008), for the proposition that "when a public employee speaks as a citizen on matters of public concern despite the absence of any job-related reason to do so, the employer may not take retaliatory action." *Doc. 53* at 27.   However, Plaintiff ignores a significant portion of the quote upon which she relies.   In *Thomas*, the Tenth Circuit explains, "It has long been established law in this circuit that when a public employee speaks as a citizen on matters of public concern

11

**to outside entities despite the absence of any job-related reason to do so**, the employer may not take retaliatory action."   *Thomas v. City of Blanchard*, 548 F.3d 1317, 1328 (10th Cir. 2008) (quoting *Casey*, 473 F.3d at 1333-34)) (emphasis added).

Plaintiff was not speaking to "outside entities" as student, parents and teachers formed the vast majority of the audience.   Unlike the plaintiff in *Thomas*, Plaintiff was speaking to people she was obligated to communicate with on a subject that, as Principal, she was bound to evaluate and assess.   It has not been clearly established that a government employer violates the constitution under these circumstances.   Therefore, even if Plaintiff could establish a violation of her First Amendment rights, which the Court finds she cannot, she fails to establish that her constitutional right was clearly established.

Finally, because there was no violation of Plaintiff's constitutional rights, summary judgment must also be granted to CCSD and Superintendent Levinski in his official capacity.

Wherefore,

IT IS HEREBY ORDERED that Plaintiff's Motion for Leave to File a Surreply (*Doc. 62*) is **granted**.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Defendants' Motion for Summary Judgment (*Doc. 48*) is hereby **granted**, and this action dismissed with prejudice.   A final judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure will entered forthwith.

_____
UNITED STATES CHIEF MAGISTRATE JUDGE
Presiding by Consent